W. E. JAMES, Appellee, v. FRED H. ALLEN et al., Appellants.

APRIL 3, 1928.

*John Fletcher*, Attorney-general, and *McGrath, Archerd & McGrath*, for appellants.

*Sylvester Flynn*, for appellee.

FAVILLE, J.—One Allen owned a farm of 313 acres in Wright County. There was a first mortgage on said farm of $35,000, and a second mortgage of $14,000. The $14,000 mortgage was held by Allen's mother, who subsequently died, and foreclosure of said mortgage was threatened. Allen had become indebted to the Citizens State Bank of Eagle Grove, and said indebtedness was finally evidenced, in December, 1924, by a mortgage of $23,000, given by Allen and his wife to said bank. This mortgage was not of record. In order to raise the money to pay the heirs of his mother, and to satisfy the said $14,000 second mortgage, the heirs having agreed to accept $12,000 in payment thereof, Allen applied to the said bank for a loan of $12,000, with which to pay off the second mortgage of $14,000. In view of his existing indebtedness to the bank of $23,000, an additional loan of $12,000 would have been excessive. It was

arranged, however, that the bank should make said loan to Allen of the said sum of $12,000, and take a mortgage on said real estate therefor, and that the proceeds should be used to satisfy and pay off the outstanding mortgage of $12,000 held by the estate. At that time, the appellee, James, held a mortgage executed by one Benson for the sum of $12,000 upon a farm belonging to Benson. James was a stockholder and director in the Citizens State Bank. The officers of said bank approached James with a proposition that he exchange his $12,000 Benson mortgage for the new Allen mortgage of $12,000, and it was agreed at the time by all parties that the said $12,000 mortgage of Allen should be a second mortgage upon said property, subject only to the first mortgage of $35,000. In other words, it was agreed between the parties that said mortgage should be senior and superior to the $23,000 unrecorded mortgage then held by the bank, of which James had notice. This arrangement was carried out between the parties. Allen executed and delivered to the bank his note and mortgage for the $12,000, and received the amount which was used to pay the outstanding second mortgage held by the Allen estate. James turned over his $12,000 Benson note and mortgage to the bank, in exchange for the Allen mortgage of $12,000. He did not, at the time, however, receive the Allen mortgage. Subsequently, the bank failed, and was placed in the hands of a receiver; and, upon proper application to the court, the receiver was ordered to turn the said Allen mortgage of $12,000 over to James, and this was done.

It is the contention of the appellant, in effect, that the existence of the $23,000 mortgage to the bank and James' knowledge thereof at the time that he exchanged his Benson note and mortgage for the Allen $12,000 mortgage, make the $23,000 mortgage held by the bank senior and superior to the $12,000 mortgage now held by James. The question of constructive notice under the recording acts is not involved. The fact that James knew of the existence of the $23,000 mortgage held by the bank is established, under the record, and it is also without substantial conflict in the evidence that it was orally agreed between the officers acting for the bank and James, as well as the mortgagor Allen, that the $12,000 mortgage given by Allen to the bank should be a second lien on said premises, subject only to the first mortgage of $35,000, and that the bank's

mortgage of $23,000 should be junior and inferior to the said $12,000 mortgage. We think the facts of the case bring it within well established and well recognized rules. In 1 Jones on Mortgages (7th Ed.), Section 608, it is said:

"The parties may, as between themselves, make a valid agreement, though it be verbal only, that one of two mortgages shall be prior to the other, and the order of record is then immaterial, unless they are subsequently assigned to other persons who have no notice of the agreement."

Numerous authorities are cited in support of this text. In 41 Corpus Juris 512, Section 448, it is said:

"The lien of a senior mortgage will be subordinated to that of a junior incumbrance, where an agreement to that effect is made between the parties to the first mortgage, or between the two mortgagees."

In 41 Corpus Juris 550, Section 498, it is said:

"The order of priority between two mortgages which would ordinarily result from their relative positions on the records may be reversed by an agreement of the parties to that effect * * * ."

Numerous authorities are cited in support of these statements by the text-writers, which we do not deem it necessary to review at length. As bearing somewhat on the question involved, see, also, *Morgan v. Kline*, 77 Iowa 681; *Higgins v. Dennis*, 104 Iowa 605; *National Life Ins. Co. v. Ayres*, 111 Iowa 200.

Under the record, there is no evidence of fraud on the part of James that bars his right of priority, under the facts disclosed, nor is he estopped to assert his right to claim such priority. The receiver and the creditors of the bank are in exactly the same position they have been in all of the time, with regard to the $23,000 indebtedness of Allen to the bank, except that, by the arrangement made, said indebtedness is subject to a $12,000 mortgage in the hands of the appellee, in lieu of the $14,000 mortgage which was held by the Allen estate. We find no basis, upon the facts of the record or under the law, to deny the appellee, James, the relief granted by the decree of the trial court, and it is, therefore,—*Affirmed.*

All the justices concur.